

June 12, 2020

BY ECF

Hon. Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Tanzanian Gold Corp. f/k/a Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd., et al.*,
      Case No. 18-cv-4201

Dear Judge Netburn:

    Plaintiff Tanzanian Gold Corporation f/k/a Tanzanian Royalty Exploration Corp. ("TGC") and Defendants Crede CG III, Ltd. ("Crede"), Terren Peizer, and Michael S. Wachs (collectively, "Defendants"), jointly submit this letter in response to Your Honor's June 9, 2020 Order denying the parties' request to continue the existing stay, and requiring the parties to submit a "proposed schedule for depositions and expert discovery." (ECF No. 128.)  The parties met and conferred regarding a proposed schedule, but have been unable to reach agreement.  The parties' respective positions are set out below.

Defendants' Position

    In response to Your Honor's Order, on June 9, 2020, Defendants proposed the below schedule to TGC.  In short, Defendants anticipate that the relatively few depositions to be taken in this case can be completed over the summer – remotely if necessary or in person if conditions allow – and the remainder of the proposed schedule will promote an efficient resolution of this matter.

| August 28, 2020 | Completion of Depositions |
|---|---|
| September 30, 2020 | Opening Expert Reports |
| October 30, 2020 | Rebuttal Expert Reports |
| November 24, 2020 | Completion of Expert Depositions |
| January 22, 2021 | Opening Summary Judgment Brief |
| February 26, 2021 | Summary Judgment Opposition |
| March 19, 2021 | Summary Judgment Reply |

    By contrast, TGC proposes to re-open long-ago closed document discovery and drag out resolution of this case for more than a year.  Defendants object to TGC's proposal and, specifically, to re-opening written discovery, because (1) TGC has had Crede's complete production since document

Hon. Sarah Netburn, U.S.M.J.
Page 2

discovery closed more than seven months ago; (2) TGC has failed to pursue diligently any additional discovery it (incorrectly) believes it needs, despite the fact that document discovery was never stayed, and the Court explicitly ordered it to continue; and (3) TGC's initial Requests for Production ("RFPs") were broad enough to cover all allegations contained in the operative Second Amended Complaint ("SAC") (ECF No. 126), which, in essence, allege that Crede concealed its intent to sell – and its method of sale for – the TGC shares Crede received pursuant to the parties' contracts and that Crede furthered its alleged scheme by failing to file a timely Schedule 13D or 13G with the U.S. Securities Exchange Commission.

Although the Court is familiar with the chronology of events here, given TGC's position, a refresher is warranted.

The original deadline for the completion of document discovery was July 23, 2019. (ECF No. 54.) Defendants met that deadline, producing over 1,500 pages of documents. (By contrast, Plaintiff produced a mere 172 pages a day late.) Importantly, all of Crede's stock sale records for TGC stock were included in this production.[1]

Nonetheless, TGC contended that Crede's production was incomplete based on inadequately broad search parameters. (ECF No. 72.) Your Honor resolved this dispute by order dated September 23, 2019. (ECF No. 76.) Specifically, Your Honor ordered Defendants to search for and produce documents from an expanded time period and further ordered that "[a]ll document production must be completed by October 11, 2019." (*Id.*) Accordingly, Defendants produced an additional 6,717 pages by the deadline, for a total of approximately 8,000 pages (consisting of approximately 1,000 documents).

On October 29, 2019, due to TGC's principal's health issues, TGC requested – and this Court granted – a stay of depositions and expert discovery (the "Stay Order"). (ECF No. 87.) The Stay Order specifically required that "[t]he parties *shall continue exchanging documents* and are to comply with all other deadlines set by the [prior scheduling order]." (*Id.*) (emphasis added). The Stay Order also required the parties to submit a joint status letter by January 3, 2020. (*Id.*)

TGC identified its expert, Andrew Roper, to Crede on December 13, 2019. On January 3, 2020, TGC filed the status letter required by the Stay Order and requested a 90-day extension of the "*stay on depositions*". (*Un-filed Ltr. from G. Johnson to M.J. Netburn* (Jan. 3, 2020)) (emphasis added). Having now been in possession of Crede's complete document production for two months, TGC represented to

---

[1] According to TGC's SAC, Crede twice sold TGC shares subject to Warrant exercises before Crede actually received the stock, temporarily "opening up a short position". (SAC ¶¶ 50-55.) TGC also now claims below that "Defendants verified during meet and confer that they had engaged in no short sales of Plaintiff's stock" and that this statement was false. The statement was true. TGC ignores that, once an investor exercises a warrant, particularly one that is cashless, the investor is the legal owner of the underlying security when the exercise notice is sent. Thus, any sales prior to delivery were not short sales. In fact, brokerage firms will not even permit short sales in TGC stock due to margin constraints. In any event, as discussed above, Crede produced its brokerage account statements showing Crede's transactions in TGC stock in July 2019, so no matter how TGC wants to characterize Crede's transactions in TGC stock, TGC has had those records for nearly a year now.

the Court that "the parties have continued the process of completing document discovery" and to the extent "limited further meet and confer" was necessary, such discussions could be "readily resolved within the requested 90 day extension of the deposition stay." (*Id.*) (emphasis added). Your Honor granted TGC's request and extended "the stay on ***deposition and expert discovery***" until April 2, 2020, on which date the Court requested another status update. (ECF No. 92) (emphasis added).

On March 4, 2020, Crede moved to hold TGC in contempt in the action that Crede had brought against TGC in the New York State Court (the "State Court Action"). Crede contended that TGC had failed to deliver stock to Crede pursuant to the judgment entered against TGC in the State Court Action.

On March 6, 2020, TGC responded to Crede's contempt application by filing in this Court a motion for a temporary restraining order and preliminary injunction seeking to prevent Crede from acquiring or selling TGC stock. (ECF Nos. 101-04.) TGC's motion was accompanied by the proposed SAC and a report by Mr. Roper. (ECF Nos. 101, Exs. A. I.) After expedited briefing and oral argument, Judge Liman denied TGC's motion on March 12, 2020. (ECF No. 118 at 23:14-18.) ("I find here that the movant [TGC] has not established either a likelihood of irreparable harm or a likelihood of success on the merits, and also has not established a balance of hardships tipping in its favor. In fact, I think the hardships tip in favor of Crede in this case.").

The parties submitted the required status letter to Your Honor on April 2, 2020. (ECF No. 114.) By this point, TGC had Crede's complete document production for more than five months and already had concocted (and submitted to the Court) its new theory of the case in the SAC. Yet, TGC still did not raise any purported concerns regarding the completeness of Crede's document production in the parties' joint submission, or suggest that additional discovery would be necessary – let alone serve any additional written discovery. (*Id.*)

In short, TGC has had plenty of time to review Crede's document production, engage in meet-and-confer discussions with Crede regarding that production, and bring any unresolved issues to the Court. Having sat on its hands, TGC should not be permitted yet another extension of time to engage in a fishing expedition for more written discovery, imposing additional burden and expense on Crede.

Finally, additional written discovery is unnecessary. TGC's initial RFPs to Defendants were broad enough to cover any additional topics TGC may contend are relevant to its "new" claims.[2] TGC also served a third-party subpoena on Crede's broker related to TGC's "new" contentions more than six months ago. Accordingly, TGC is not entitled to additional written discovery, nor is additional written discovery warranted or proportionate to the needs of the case.

---

[2] For example, TGC's RFP No. 5 sought "[a]ll documents that evidence, reflect, refer or relate to communications between Defendant and anyone other than Plaintiff … concerning or relating to Plaintiff, the Warrants, [or] the SPA[.]" Similarly broad was RFP No. 17, seeking "[a]ll documents that evidence, reflect, refer or relate to any sales of any shares of [TGC] made by Defendant or any of its officers . . . or agents"; RFP No. 22 seeking "[a]ll documents that evidence, reflect, refer or relate to any conduct Defendant undertook pursuant to the Registration Rights Agreement"; and RFP No. 31 seeking "[a]ll documents that evidence, reflect, refer or relate to all communications . . . between Defendant and any other entity concerning the Schedule 13G."

Hon. Sarah Netburn, U.S.M.J.
Page 4

Plaintiff's Position

In order to accommodate the additional discovery Plaintiff will need to address the claims added by the Second Amended Complaint, Plaintiff proposes the following schedule:

| | |
|---|---|
| October 30, 2020 - | Completion of Additional Written/Document Discovery to Address New Claims in Second Amended Complaint |
| January 4, 2021 - | Completion of Depositions |
| March 1, 2021 - | Opening Expert Reports |
| March 26, 2021 - | Rebuttal Expert Reports |
| April 30, 2021 - | Completion of Expert Depositions |
| May 31, 2021 - | Cut-off date for motions for Summary Judgment Brief |
| _____, 2021 - | Summary Judgment Oppositions (TBD per court order) |
| _____, 2021 - | Summary Judgment Replies (TBD per court order) |

In short, the discovery scheduled proposed by Plaintiff is a rationale and reasonable plan to facilitate its right to obtain necessary evidence relevant to the claims it recently obtained leave from the Court to add to this action—evidence it cannot credibly obtain by way of depositions or that will facilitate more efficient depositions by obtaining it in advance.  Defendants' tome that purports to recount the history of discovery in this matter is long on facts that relate to the claims that were at issue in the case, but short on what matters now—the claims that were added by duly and legally followed federal procedure and expressly permitted to be added to this action by order of this Court.  Despite Defendants' attempts to portray Plaintiff's proposal as an attempt to radically delay the resolution of this matter, it represents roughly a four month extension of the timeline Defendants propose.  Plaintiff submits this is a modest concession to permit a full and fair resolution of all of Plaintiff's claims.  Of course, it comes as no surprise that in light of the newly articulated detail as to Defendants' manipulation of Plaintiff's publicly traded stock price to its substantial benefit and the related new claims based on that conduct, that Defendants would like to proceed with no further delving into the evidence of that conduct.  Nevertheless, that is not a valid basis to deny Plaintiffs the right to develop all supportive evidence, especially on a partial record supported only by counsel's assertions.

While Plaintiff's consider a response to Your Honor's order to meet and confer about a proposed discovery schedule to not be an appropriate format to litigate the significant issue of whether or not a plaintiff should be permitted to conduct written discovery on claims newly added by amendment prior to depositions being conducted, it is appropriate notwithstanding that to at least address several key points.

First, it is not true that prior written discovery covers Plaintiff's new claims.  It certainly was not intended or tailored for that purpose. Defendants, having not even seen Plaintiff's proposed discovery, are in no position to opine that Plaintiffs have already sought and Defendants have already produced whatever would otherwise be newly requested.  Nor do they certify that they have reviewed prior discovery responses in light of Plaintiff's amended complaint and that all responsive information that would be called for by Plaintiff's prior requests in light of the amended complaint has been produced.  It is hard to imagine that that could be done credibly or that Defendants should be the ones trusted to do

so. To be sure, Control person liability claims, including the adding of individual defendants previously dismissed from the action, now necessitate factual development that was not previously permitted. Additionally, Defendants verified during meet and confer that they had engaged in no short sales of Plaintiff's stock. As a result of work done in connection with Plaintiff's motion for preliminary injunction, Plaintiff's uncovered evidence suggesting Defendants did, in fact, engage in short sales on at least two occasions, contrary to their prior representations. Based on their denial of having engaged in short sales, Defendants withheld the documentation related to these short sales. The short sales are now a key factual component of Plaintiff's case to demonstrate that Defendants knew they could manipulate Plaintiffs' publicly traded share price without any downside risk associated with the short sales. Plaintiff is entitled to get to the bottom of the story behind the short sales and why they doubled down on their denial that there were any short sales.[3]

Second, as Defendants have not even filed a responsive pleading in response to Plaintiff's amended complaint, Plaintiff has no way of knowing what defenses Defendants may assert to Plaintiff's amended complaint. Thus, even if Defendants could somehow foresee the specific discovery requests Plaintiff intends to propound with respect to its newly added allegations and claims, Plaintiff does not possess the level of clairvoyance that Defendants apparently possess, and it is therefore unable to divine Defendants as-yet unarticulated defenses or determine what additional discovery might be needed into those defenses. Additional discovery on that basis would be necessary. Additionally, Defendants have reserved for themselves, and the Court has already permitted in its scheduling order, the ability and timing to make a motion to dismiss. Defendants have not withdrawn that reservation. This further complicates any analysis of the appropriate scope of discovery. Plaintiff has no interest in conducting discovery on claims or allegations that might be eliminated through motion practice. However, at this point, and not knowing whether a motion is forthcoming and what the outcome of any such motion may be, Plaintiff must proceed on the assumption it needs discovery on all allegations and claims.

Third, Plaintiff submits that consideration of whether Plaintiff is entitled to additional discovery should be predicated on whether Plaintiff is requesting legitimate and appropriate materials in an efficient and streamlined manner. To that end, Plaintiff proposed to Defendants that it provide them with its proposed written discovery before June 19, 2020. With requests in hand, the threshold issues of whether the discovery is directly related to the new claims, streamlined in terms of the scope of what is requested, and sought materials that were not previously requested or produced and, correspondingly, can be efficiently located and produced by Defendants, would more readily inform the appropriateness of Plaintiff's proposed schedule. In essence, it would approximate a justiciable dispute this Court could credibly rule upon. Arguing about that in the abstract, exchanging hyperbolic assertions about extraneous issues, strikes Plaintiff as not doing justice to the significance and weight of Plaintiff's entitlement to evidence relevant to prosecute all of its claims—especially those newly added that give the full breadth to redressing Defendants' manipulative trading scheme.

---

[3] Contrary to Defendants' assertions, the trading records sought via subpoena from Crede's stock broker were not sought at that time to support the new claims but to ascertain from a third party whether short sales occurred. Predictably, Defendants' broker is now suspiciously out of business with no known successor custodian of those sought-after trading records, and thus, the subpoena was returned without the requested documents. This is further illustrative of why Defendants want to proceed with as little documentary search and retrieval as possible.

For these reasons, and others that Plaintiff would gladly elaborate upon if the issues can be fully developed before the Court, Plaintiff respectfully submits its proposed discovery schedule for this Court's adoption.

Respectfully submitted,

| MCDERMOTT WILL & EMERY LLP | LEWIS BRISBOIS BISGAARD & SMITH LLP |
|---|---|
| /s/ *Andrew B. Kratenstein* | /s/ *Peter T. Shapiro* |
| Andrew B. Kratenstein | Peter T. Shapiro |
| Lisa A. Gerson | Brian Pete |
| Joseph B. Evans | 77 Water Street, Suite 2100 |
| Caroline Incledon | New York, New York 10005 |
| 340 Madison Avenue | (212) 232-1300 |
| New York, New York 10173-1922 | |
| (212) 547-5400 | Greg L. Johnson (admitted *pro hac vice*) |
| | 2020 West El Camino Avenue, Suite 700 |
| *Attorneys for Defendants Crede CG III, Ltd., Terren Peizer, and Michael S. Wachs* | Sacramento, California 95833 |
| | *Attorneys for Plaintiff Tanzanian Gold Corporation f/k/a Tanzanian Royalty Exploration Corp.* |